[S. F. No. 11365. In Bank.—August 13, 1925.]

## H. FOURCADE et al., Petitioners, v. CITY AND COUNTY OF SAN FRANCISCO, etc., et al., Respondents.

[1] MUNICIPAL CORPORATIONS—ZONING ORDINANCES—POLICE POWER.— The police power that may be exercised by municipalities in the enactment of zoning ordinances is not inflexible. Its proper exercise, rather, postulates an expansiveness and an elasticity that must meet the growth and expansion of a municipality.

[2] ID.—COMPREHENSIVE ZONING—POLICE POWER.—In so far as the general principle of comprehensive zoning is concerned, the segregation of residences, industries, commercial and mercantile businesses of divers kinds to particular localities, is a proper and legitimate exercise of the police power as bearing a rational relation to the health, safety and general welfare of the community.

[3] ID.—SAN FRANCISCO ZONING ORDINANCE—EXCLUSION OF MILK PASTEURIZATION PLANT FROM RESIDENTIAL DISTRICT—REASONABLE EXERCISE OF POWER.—The zoning ordinance of the city and county of San Francisco, in excluding a milk pasteurizing, bottling, and

---

1.  See 18 Cal. Jur. 858; 19 R. C. L. 818.

distributing plant from a residential district, is a reasonable exercise of the police power vested in that municipality.

[4] ID.—SUITABILITY OF EXCLUDED DISTRICT FOR MILK PLANT—CONSIDERATION BY BOARD OF SUPERVISORS—EVIDENCE.—The fact that milk is a food staple of great value to human beings, that it is of a delicate character and easily exposed to contamination, and that it is important that such a plant as a milk pasteurizing, bottling, and distributing depot should be located as near as reasonable to the homes of the consumers thereof in order to insure its expeditious delivery and reduce the possibility of pollution, does not show that the board of supervisors of the city and county of San Francisco, in excluding a milk pasteurizing, bottling, and distributing plant from a residential district, failed to take into consideration the suitability of the excluded district for such a plant, where it is shown that milk pasteurization plants can be and are successfully operated in industrial districts, and that the board of supervisors, in adopting the ordinance, had in view the character of the various districts, their peculiar suitability for particular uses, the conservation of property values therein, and the direction of property development in accordance with a well-considered plan.

[5] ID.—PASTEURIZATION OF MILK—PROPER DISTRICTS FOR.—While the importance of milk as an article of diet is conceded, it cannot be said that milk must necessarily be pasteurized close to the consumers in order to lessen the possibility of contamination. Until it be found that milk cannot be pasteurized and distributed from districts other than residential with reasonable safety and convenience, it cannot be said that the relegating of pasteurizing plants to districts other than residential or commercial by the board of supervisors is an unreasonable and arbitrary provision of the San Francisco zoning ordinance.

[6] ID.—INDUSTRIAL CHARACTER OF PLANT.—The introduction of any form of business or industrial use into strictly uniform home districts operates, in a measure at least, to lower the value and depreciate the desirability of surrounding property for residential purposes; and a milk pasteurization plant being indisputably an industrial use clearly would be out of harmony in a residential district.

[7] ID.—ESTABLISHMENT AND MAINTENANCE OF RESIDENTIAL DISTRICTS—FEASIBILITY OF—DETERMINATION OF LEGISLATIVE BODY FINAL.—A municipality has power to establish and maintain residential and *quasi*-residential districts and to exclude therefrom all non-conforming and conflicting uses; and when establishing such districts the legislative body of a municipality decides that it is feasible and essential to the general welfare of the community to

exclude pasteurizing plants from the same, it is not within the province of the courts to dispute the wisdom of their judgment.

[8] ID.—EXCLUSION OF MILK PASTEURIZING PLANT FROM RESIDENTIAL DISTRICT—REASONABLENESS OF ORDINANCE—PROVINCE OF COURTS.— The board of supervisors of the city and county of San Francisco having determined in favor of the exclusion of milk pasteurization plants from residential districts, and it not appearing that the zoning ordinance adopted by said board is inherently unreasonable, the determination of said board is final, and the courts are foreclosed from substituting their judgment for the legislative judgment to the effect that the enactment of the zoning ordinance had reasonable relation to the promotion of the general welfare of the community.

---

(1) 28 Cyc., p. 692, n. 65.   (2) 28 Cyc., p. 737, n. 52 New.   (3) 28 Cyc., p. 737, n. 52 New.   (4) 28 Cyc., p. 737, n. 52 New.   (5) 28 Cyc., p. 737, n. 52 New.   (6) 28 Cyc., p. 737, n. 52 New.   (7) 28 Cyc., p. 737, n. 52 New.   (8) 38 C. J., p. 919, n. 27; 28 Cyc., p. 282, n. 96, p. 773, n. 96.

PROCEEDING in Mandamus to compel the Board of Public Works of the City and County of San Francisco to issue a permit for the construction of a milk pasteurizing, bottling, and distributing plant.   Writ denied.

The facts are stated in the opinion of the court.

Raymond D. Williamson, W. Murphy and Wm. J. Hayes for Petitioners.

George Lull and M. T. Dooling for Respondents.

LENNON, J.—This is a proceeding in *mandamus*, instituted in this court, to compel the board of public works of the city and county of San Francisco to issue a permit for the construction of a milk pasteurizing, bottling, and distributing plant upon the property of petitioners. An alternative writ was issued, and after the issues were joined, a referee, pursuant to the stipulation of all the parties, was appointed to take testimony and report his findings of fact to this court. The same have been filed. The sufficiency and correctness of these findings being conceded, they are approved and accepted by this court.

196 Cal.—42

The petition for the writ challenges the validity of the zoning ordinance of the city and county of San Francisco upon the ground that the restrictions imposed upon the prop-erty of petitioners, under and by virtue of the said ordi-nance, are unreasonable and arbitrary and, therefore, not a proper exercise of the police power.

The material findings of fact made by the referee, suc-cinctly stated, are these: The "Zoning Law" of the city and county of San Francisco is a comprehensive zoning ordi-nance, adopted by the board of supervisors of the said city and county. This ordinance was adopted after an exten-sive survey of the entire city and county by the planning commission of said city and county. Subsequent to a care-ful investigation of the facts thus secured and before the adoption of the ordinance, a tentative zone map of said city and county, dividing said city and county into six different classifications, was prepared. Thereafter numerous public hearings, to which all persons interested were urged to come and present their objections, if any, to the classification thus made, were held by the said commission. After considering the facts elicited by this survey and the objections made at said public hearings the commission prepared a complete zoning ordinance, segregating the entire city and county of San Francisco into six classes. This proposed ordinance was then taken up by the board of supervisors and further public hearings thereon were held by that board, at which all the residents of the city and county of San Francisco were invited to appear and present such objections as they might have to said proposed ordinance, either in whole or in part. Many residents of the said city and county did appear at said hearings and the board of supervisors finally, on October 3, 1921, adopted the ordinance in question (No. 5464, New Series). In ultimately adopting said ordinance said board took into consideration not only the results of the preliminary survey and public hearings held by the city planning commission, but also suggestions made by citizens of the city and county of San Francisco at the public hear-ings held by said board. Said ordinance was adopted by the board of supervisors, having in view the character of the various districts, their peculiar suitability for particular uses, the conservation of property values, and the direction

of property development in accord with a well-considered plan.

The ordinance in question is entitled, an ordinance "regulating and establishing the location of trades, industries and buildings, and the location of buildings designed for specific uses; and establishing the boundaries for said purposes, and providing penalties for the violation of its provisions." It provides that, "For the purpose of regulating and establishing the location of trades and industries, businesses, dwellings and the location of buildings designed for specific uses, the city and county of San Francisco is hereby divided into six classes of districts, (1) 'First Residential District,' (2) 'Second Residential District,' (3) 'Commercial District,' (4) 'Light Industrial District,' (5) 'Heavy Industrial District,' (6) 'Unrestricted District.'"

In a "Second Residential District," by the provisions of the ordinance, no building may be constructed or altered which shall be used or which shall be intended to be used for any purpose other than for a single family dwelling, flat, apartment house, tenement house, boarding or lodging house, hotel, library, public building, hospital or sanitarium, police station, fire station, philanthropic and eleemosynary institution other than a correctional institution, community clubhouse, etc. It is, in brief, restricted to residential uses exclusively and such uses as public necessity requires.

The petitioner, Fourcade, is the owner of a triangular block, bounded by Duncan Street, Guerrero Street, San Jose Avenue, and the intersection of San Jose Avenue and Guerrero Street in the city and county of San Francisco. This property is situated in a district designated by the said zoning ordinance as a "Second Residential District." The district in which the block of land is located is, and was at the time of the adoption of said ordinance, devoted almost exclusively to residence purposes. The zoning map shows this "Second Residential District" to be bounded by Army Street, Dolores Street, Twenty-ninth Street, Tiffany Avenue, and Valencia Street, in said city and county, and includes nine blocks, in which area the lot of land owned by petitioners is situated and shows the uses to which the lots within the described district were devoted at the time said ordinance was adopted and also the new buildings which have been constructed since the adoption of said ordinance

and the uses to which said buildings are devoted. At the time the ordinance was adopted there were in said nine blocks immediately surrounding the described area 236 buildings devoted exclusively to residence purposes and only twenty-one buildings devoted to uses other than residential. Several of the latter had small stores on the first floor with apartments or flats devoted exclusively to residential purposes on the floors above. Since the adoption of said ordinance there have been constructed in this district and fronting upon San Jose Avenue, between Duncan Street, and the intersection of said San Jose Avenue with Guerrero Street, eight buildings devoted exclusively to residence purposes at a total cost of $78,000. All of these buildings face directly upon the lot upon which petitioner, La Brucherie, seeks a permit to erect a milk pasteurizing plant. There has been likewise constructed on Guerrero Street, between Duncan Street and the intersection of Guerrero Street with San Jose Avenue, one building devoted exclusively to residential uses, at a cost of $25,000. This building fronts upon the lot of petitioners. There is, also, located in this district, St. Luke's Hospital. Subsequent to the passage of the ordinance in question, additions were made to this hospital, which institution is one of the permissible uses in a ''Second Residential District,'' at a total cost of $78,000. These additions were made in reliance upon the fact that said district was classified as residential in the zoning ordinance, and that no property in such a designated district would thereafter be devoted to other than residential purposes.

Subsequent to the adoption of the ordinance, petitioner Fourcade entered into an agreement with his copetitioner, La Brucherie, wherein the latter agreed to purchase from Fourcade a portion of said triangular block fronting on Guerrero Street, San Jose Avenue, and Duncan Street, and upon which La Brucherie proposed to erect his pasteurizing plant. It was understood, however, that the consummation of said agreement would depend entirely upon obtaining a permit from the board of public works for the construction on said lot of said plant in accordance with certain plans and specifications. In compliance with the provisions of the zoning ordinance, petitioner La Brucherie applied on two different occasions to the board of supervisors for a change of zone so as to permit the construction on the described lot

of a building for the purposes stated. These requests were referred to the city planning commission, as provided in the ordinance, and after hearing thereon, at which the petitioner La Brucherie appeared and was accorded a hearing, the commission recommended to the board of supervisors that same be denied. The said board accepted the recommendation of the city planning commission and adopted resolutions denying the applications. Petitioner La Brucherie then filed his application for a permit with the board of public works of said city and county, which after due hearing was denied upon the ground and for the only reason that the erection of the building in question would be contrary to the provisions of the zoning ordinance.

Under the said zoning ordinance the only districts in the city and county of San Francisco in which a building may be erected for the pasteurizing of milk and the bottling thereof are the following: "Light Industrial Districts," "Heavy Industrial Districts," and "Unrestricted Districts." These districts are less suited and less fitted for the stated purposes than a residential district because, in the former, the plant is removed from the districts where the bulk of milk produced is daily consumed. In residential districts, furthermore, there is less possibility of contamination from smoke, dirt, dust, fumes, and odors which ordinarily are to be found in an industrial district.

Milk, finds the referee, is a food staple of great value to human beings. It is of a delicate character and easily subject to contamination, and it is important, therefore, that such a plant as a milk pasteurizing, bottling, and distributing depot should be located as near as reasonable to the homes of the consumers thereof in order to insure its expeditious delivery and reduce the possibility of pollution.

The primary point presented for decision in this case is whether or not the excluding of a milk pasteurizing, bottling, and distributing depot from a residential district is a reasonable exercise of the police power vested in a municipality by virtue of the constitutional grant of power to municipalities. (Art. XI, sec. 11, Const. of Cal.; Enabling Act of 1917, p. 1419.)

At the outset of a discussion of this point it may be stated that the elaborate survey of the police power in relation

to its exercise by municipalities in enacting zoning ordinances in the recent cases decided by this court (*Miller* v. *Board of Public Works*, 195 Cal. 477 [38 A. L. R. 1479, 234 Pac. 381], and *Zahn* v. *Board of Public Works*, 195 Cal. 497 [234 Pac. 388]), makes unnecessary a detailed discussion of this subject here and now. [1] It is to be borne in mind, however, that we are dealing with one of the most necessary powers of government, and it may not be remiss to reiterate that it is not inflexible. Its proper exercise, rather, postulates an expansiveness and an elasticity that must meet the growth and expansion of a municipality. "In short, the police power, as such," as was stated in *Miller* v. *Board of Public Works, supra,* "is not confined within the narrow circumscription of precedents, resting upon past conditions which do not cover and control present-day conditions obviously calling for revised regulations to promote the health, safety, morals or general welfare of the public. That is to say, as a commonwealth develops politically, economically and socially, the police power likewise develops, within reason, to meet the changed and changing conditions. What was at one time regarded as an improper exercise of the police power may now, because of changed living conditions, be recognized as a legitimate exercise of that power."

[2] It is now settled in this state, in so far as the general principle of comprehensive zoning is concerned, that the segregation of residences, industries, commercial, and mercantile businesses of divers kinds to particular localities, is a proper and legitimate exercise of the police power as bearing a rational relation to the health, safety and general welfare of the community. (*Miller* v. *Board of Public Works, supra; Zahn* v. *Board of Public Works, supra.*)

[3] The procedure followed by the board of supervisors of the city and county of San. Francisco in adopting the zoning ordinance in question brings that enactment precisely within the principle announced in the above cited cases. We cannot say from the facts found that the districting of the particular area in question is an arbitrary and unreasonable exercise of the police power. [4] It is contended in this behalf that the board of supervisors of the city and county of San Francisco, in adopting the said zoning ordinance, did so without giving reasonable consideration

to the character of the particular district in question, wherein the property of petitioners is situate, and the suitability of this district for particular purposes. Petitioners' argument hinges upon the findings of the referee to the effect that milk is a food staple of great value; that it is delicate and easily exposed to contamination; that the districts in which the operation of pasteurization plants are now permitted under the zoning ordinance are less suited for such purposes than residential districts; that, at present, pasteurization plants, by virtue of said ordinance, are removed from residential districts where the bulk of milk is daily consumed; that the districts to which the said plants are now relegated are objectionable by reason of the dust, dirt, smoke, fumes, and odors which permeate such districts; and that it is of great importance to the consumers that pasteurization plants should be as near as possible to their homes, in order to insure and facilitate quick and economical delivery and, consequently, that it is for the best interests of the consumers that such plants should be located in residential districts. These findings indicate, petitioners contend, that the board of supervisors in adopting the ordinance in question did not know and keep in mind the particular character and suitability of the district for a milk pasteurizing, bottling, and distributing depot.

This contention cannot be sustained. The evidence adduced before the referee shows without contradiction that milk pasteurization plants can be and are successfully operated in industrial districts. And the findings of the referee clearly show that, in adopting the ordinance here assailed, the board of supervisors had in view the character of the various districts, their peculiar suitability for particular uses, the conservation of property values therein and the direction of property development in accordance with a well-considered plan. This finding negatives the contention that said board failed to take into consideration the suitability of the particular district for the proposed use.

[5] The importance of milk as an article of diet is readily conceded, but it cannot be said that milk must necessarily be pasteurized close to the consumers in order to lessen the possibility of contamination. Until it be found that milk cannot be pasteurized and distributed from districts other than residential with reasonable safety and conveni-

ence, it cannot be said that the relegating of pasteurizing plants to districts other than residential or commercial by the board of supervisors is an unreasonable and arbitrary provision of the ordinance in question.

It was held in *Miller* v. *Board of Public Works, supra,* that as a part of a general comprehensive zoning plan strictly private residential districts may be established. The basis of the rule there announced is the reasonable and necessary protection of the general uniform home districts from the encroachment of foreign and discordant uses, which would ultimately destroy such districts. [6] It is manifest that the introduction of any form of business or industrial use into strictly uniform home districts operates, in a measure at least, to lower the value and depreciate the desirability of surrounding property for residential purposes. A milk pasteurization plant being indisputably an industrial use clearly would be out of harmony in a residential district.

[7] The power of a municipality to establish and maintain residential and *quasi*-residential districts and to exclude therefrom all nonconforming and conflicting uses is now established in this state. (*Miller* v. *Board of Public Works, supra; Zahn* v. *Board of Public Works, supra.*) And when establishing such districts the legislative body of a municipality decides that it is feasible and essential to the general welfare of the community to exclude pasteurizing plants from the same, it is not within the province of this court to dispute the wisdom of their judgment. [8] The board of supervisors having determined the question in favor of the exclusion of milk pasteurization plants from residential districts, that determination is final so far as this court is concerned. "It is scarcely necessary to reiterate here the well-recognized principle that courts are loath to substitute their judgment as to the necessity for a particular enactment for the legislative judgment as to the need of such enactment with reference to the exercise of the police power. A large discretion is vested in the legislative branch of the government with reference to the exercise of the police power. . . . Every intendment is to be indulged by the courts in favor of the validity of its exercise, and unless the measure is clearly oppressive it will be deemed to be within the purview of that power. . . . The courts may differ with

the legislature as to the wisdom and the propriety of a particular enactment as a means of accomplishing a particular end, but as long as there are considerations of public health, safety, morals, or general welfare which the legislative body may have in mind, which could have justified the regulation, it must be assumed by the court that the legislative body had those considerations in mind and that those considerations did justify the regulation. . . . In *Ex parte Hadacheck, supra* (165 Cal. 416 [L. R. A. 1916B, 1248, 132 Pac. 584]), the court held, in effect, that when the necessity or propriety of an enactment was a question upon which reasonable minds might differ, the propriety and necessity of such enactment was a matter of legislative determination." (*Miller* v. *Board of Public Works, supra.*) Inasmuch as it does not appear from the unquestioned and admitted facts of the instant case that the ordinance in question, in its application and its consequences, is inherently unreasonable, we are necessarily foreclosed from substituting our judgment for the legislative judgment to the effect that the enactment of the zoning ordinance of the city and county of San Francisco had reasonable relation to the promotion of the general welfare of the community.

Petitioners' points and authorities, which accompanied the petition for the writ, presented, in addition to the points hereinbefore discussed and decided, several other points which were not urged nor in anywise referred to in the briefs which were finally filed in the case and upon which the case was submitted for decision. We take it, therefore, that the points last mentioned have been abandoned by petitioners. Indeed, they may well have been abandoned because they were decided adversly to the contention of petitioners in the recent cases of *Miller* v. *Board of Public Works, supra,* and *Zahn* v. *Board of Public Works, supra,* which were decided subsequent to the filing of the petition in this case. It will be unnecessary, therefore, to discuss and decide the remaining points which were originally urged in support of the petition for the writ.

A peremptory writ is denied and the alternative writ is discharged.

Lawlor, J., Seawell, J., Richards, J., Houser, J., *pro tem.,* and Myers, C. J., concurred.