[Civ. No. 7081. First Appellate District, Division One.—June 30, 1930.]

E. B. BROUGHER et al., Appellants, v. THE BOARD OF PUBLIC WORKS OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

David K. Watkins for Appellants.

John J. O'Toole, City Attorney, Walter A. Dold, Chief Deputy City Attorney, Alan C. Van Fleet, O. K. Grau and Charles A. Christin for Respondents.

CAMPBELL, J., *pro tem.*—This is an appeal from a judgment denying plaintiffs a peremptory writ of mandate directing the Board of Public Works of the City and County of San Francisco and its three members as commissioners of such board to issue a permit to plaintiffs for the erection of a building, and for damages against the city caused by delay in issuing such permit.

On April 18, 1927, plaintiffs applied to the Board of Public Works for a building permit to erect a ten-story hotel, 110 feet in height, on Jefferson Street in San Francisco, such board being vested by the city charter with the issuance of such building permits, and the application being—as alleged and admitted in the pleadings—in com-

pliance with the requirements of all building ordinances in force at the time of the application. The board found no objection to the issuance of the permit, but failed to take action thereon until ordinance No. 7519 (new series) was adopted by the supervisors and approved May 9, 1927, by the mayor, under the provisions of which all buildings within a defined area, which included the property on which it was proposed to erect the hotel, were limited to a maximum height of forty feet. The board thereupon denied plaintiffs' application for the permit on the ground that the proposed height of the building exceeded forty feet. Subsequently plaintiffs—appellants herein .filed a petition for a writ of mandate in the Supreme Court to compel respondents to grant the permit for the erection of the hotel in question. The Supreme Court ordered respondents to show cause why an alternate writ of mandate should not issue. A return to the order to show cause was filed, the petition argued and submitted and the petition was dismissed (*Brougher* v. *Board of Public Works, etc.,* 205 Cal. 426 [271 Pac. 487, 493]). All questions of law pertaining to the case it appears were disposed of. The dismissal of the petition, however, was made "without prejudice to the right of petitioners to seek in the proper tribunal such relief, not inconsistent with the views herein expressed, as they may be advised they are entitled to."

It appears that the premises upon which petitioners desire to construct the ten-story hotel as described in the petition have since 1924, by reason of ordinance No. 6222, been within the district classified as "second residential" under zoning ordinance No. 5464, adopted in 1921, which ordinance No. 5464, as to its expressed purposes and objects, will be found to be the subject of a general and historial reference in the opinion of the Supreme Court in *Fourcade* v. *San Francisco,* 196 Cal. 655 [238 Pac. 934, 935], in which the use restrictions as found in the ordinance are set forth and commented upon and in which opinion a "second residential" district is characterized as being in brief one "restricted to residential uses exclusively and such uses as public necessity requires." Under such zoning ordinance the city and county of San Francisco was divided into six classes of districts: First residential district, second residential district, commercial district, light in-

dustrial district, heavy industrial district and unrestricted district. Had the board of supervisors, when it so undertook to zone the city and county of San Francisco into districts, prescribed in such ordinance the height limitations of the buildings embraced within the restricted uses of the district, it would have, as it is termed, "zoned for height of buildings" as well as for "uses," and such zoning as to height of buildings would in effect have been a legislative finding that the maintenance of such height or rather the restriction to such maximum height of buildings, for the uses of each of the classified districts was "necessary" to the "public welfare" (*In re White*, 195 Cal. 520 [234 Pac. 396]). But as the zoning ordinance zoned for "uses" only it did not specifically nor in terms undertake to make any restrictions as to maximum building height, and, moreover, did not purport to repeal the general building ordinance No. 1008 or any provision in it as to maximum height of buildings. Nor would it seem that there was anything basally wrong or at variance with the theory of zoning in not incorporating within the zoning ordinance at the time of enactment restriction as to maximum height of buildings, for in the absence of express provision to the contrary, it has been held that building regulations are not necessarily inconsistent with zoning regulations and that both sets of regulations may remain in force at the same time, each being referable to the same source—the police power (*Norcross* v. *Board of Appeal of Building Dept. of Boston*, 255 Mass. 177 [150 N. E. 887]). To what extent zoning ordinance No. 5464 was before the court in *Brougher* v. *Board of Public Works, supra,* is not clear from the language of the opinion, but it is manifest that the pleadings then before the court averred that the ordinance permitted the erection of hotels and apartment houses in the second residential district and that petitioners' property was within such district. It would therefore appear that the court in not sustaining petitioners' contention upon petition and answer must necessarily have declined to hold that a forty-foot limitation was on its face manifestly and palpably unreasonable for such declared and districted uses, and that likewise it must have declined to hold that such limitation was on its face manifestly and palpably discriminatory against the petitioners. ■ Consequently if the

ordinance is invalid, it must be so by reason of evidence adduced at the trial, under the issues of "discrimination," "unreasonableness," "oppressiveness," "arbitrary action," "confiscation," etc.; and in determining this issue the court may not substitute its opinion as to the necessity of a particular enactment for the legislative judgment when the necessity or propriety of an enactment is a question upon which reasonable minds may differ, for then the propriety and necessity of such an enactment are matters of legislative determination (*Wickham* v. *Becker*, 96 Cal. App. 443 [274 Pac. 397]; *Zahn* v. *Board of Public Works*, 195 Cal. 497 [234 Pac. 388]).

Appellants urge that the dismissal of the writ by the Supreme Court was contrary to law and plaintiffs' rights for the reason that it had already taken jurisdiction by setting for and hearing argument, thereby waiving its rule XXVI, and that the statute, chapter II, title I, part III, (secs. 1084–1097) of the Code of Civil Procedure gives to suitors an unconditional right to seek relief in either the superior court or the Supreme Court, and that the latter has no power to restrict that right of choice and cannot lawfully make any such condition as is contained in its rule XXVI, i. e., that a reason must be given satisfactory to the court before a suitor may have the relief in the Supreme Court, and cites *People* v. *McClellan*, 31 Cal. 101, 103, holding that a "rule which operates to deprive a party of a statutory right is repugnant to the statute and therefore to that extent void," and that jurisdiction of a court conferred by the Constitution or statute cannot be enlarged or diminished by a rule of court (15 Cor. Jur. 907). While it is true that the Constitution (art. VI, sec. 4) grants to the Supreme Court jurisdiction to issue writs of *mandamus*, such jurisdiction was conferred subject to all fundamental principles governing the issuance of such writ. The writ of *mandamus* is a prerogative writ and is not issued of right in all cases, but its issuance is within the discretion of the court and there are many reasons why a court may properly exercise its discretion not to grant such writ. The Constitution (art. VI, sec. 5) likewise gives to the superior court jurisdiction to grant writs of *mandamus*, and since these courts are constituted especially for the purpose of the ascertainment of facts and the trial of cases

upon facts, it is quite proper for the Supreme Court to adopt a rule governing the discretionary action of the court in passing upon an application for a prerogative writ, that such application will not be entertained where there is no sufficient reason shown why the application was not made in the superior court.

At the trial plaintiffs attempted to show that the ordinance was unreasonable, arbitrary, discriminatory, confiscatory, etc. The testimony shows the general contour of the land referred to in the ordinance; that the area covered by it is bounded by Lyon Street (or the Presidio) on the west; Jackson Street on the south; Fillmore Street on the east, and San Francisco bay on the north, and is about one-half mile wide east and west and three-quarters of a mile long north and south, and includes the so-called "Marina District" and the property immediately adjacent to it on the south. There is testimony that the Marina District is predominantly occupied by small homes and that the district or area to the south is predominantly occupied by palatial homes containing libraries and art treasures, and that this district contains the San Francisco Yacht Harbor, Marina Park, the grounds of the Palace of Fine Arts and playgrounds. There is also testimony that if this building contemplated by appellants and other buildings of similar nature were permitted, they would tower above other buildings and that this would have a detrimental effect from a health viewpoint, and that the view of many people living in the district would be obstructed and destroyed. It further appears that the entire area is one mainly devoted to homes, and that there is plenty of land to the east of this area in the path of the so-called "trend of development" upon which hotels could be constructed. There is also testimony to the effect that with tall buildings in the neighborhood the peace, public convenience, comfort and economic welfare of the people residing in the area would be adversely affected, and further it is shown that the area in question is to a great extent built up and that there are very few vacant lots remaining.

The details of the testimony would take too long to repeat, but outside of testimony that a class A hotel limited in height to forty feet would have no financial attraction, that the higher stories are necessary to economical operation and

adequate monetary return on the investment, that such higher stories are especially called for and necessary for such a hotel as that contemplated, the testimony bearing on local physical condition of the area and as to the nature and character of the buildings within it and contiguous to it and in second residential districts, together with topographical conditions, population of the area and the density thereof at various points, the evidence partakes to a very great extent of the personal opinions of the parties testifying.

It seems well settled that a municipality may in proper cases regulate as to height of buildings both as to the municipality at large and to particular and limited districts; and it would seem to be nothing unreasonable or arbitrary or a variance with considerations looking to the securing of adequate supply of sunlight and to overcome obstruction against the diffusion of the same that a municipal regulation of maximum building height for a municipality within which is embraced territory diversified by many hills should be addressed to and bear some relation to the physical peculiarities of the local and specific areas into which the municipality is capable of division. That such local physical condition may afford warrant for the operation of legislative discretion, looking at least to the general diffusion of sunlight and the retention of adequate light for residential purposes, would seem manifest under the present status of the law in regard to the public welfare.

■ Appellants argue that the ordinance is unreasonable, arbitrary, unequal and confiscatory because it does not apply to other portions of the same zoning district. In this contention appellants are first met by the well-recognized rule that the legislative body must be presumed to have fairly passed upon the facts and determined that there was reasonable ground for the territory selection. ■ All zoning prohibiting the carrying on of certain classes of business must establish boundaries and districts, and the legislative body is accorded wide discretion in determining fairly where the line shall be drawn and where in its opinion conditions differ materially from conditions elsewhere. The mere fact that the district selected may be part of one or more zoning districts or fire districts is no more important than would be the fact that the district selected comprises parts of more than one ward or supervisorial district.

Appellants are also met with the fact that the trial court has found that the allegations of their complaint in this regard are not sustained by the evidence. It is, therefore, not necessary to review the allegations of the complaint and findings of the court set out at considerable length in appellants' brief, as the only material issue raised by the complaint is that the ordinance is unreasonable, discriminatory, etc., and does not apply to the remainder of the zoning district involved. ■ The burden was upon appellants attacking the ordinance to prove that the conditions were the same. As a matter of fact it appears that in the remainder of the zoning·district in question a large number of high apartment houses had already been erected, and although from a merely geographical and topographical point of view two areas might be naturally identical, still if one of them had already been developed and improved by a certain type of structure or for certain purposes, the legislative body would be entirely justified in not making the restriction applicable to such territory, although it felt that such restriction was proper in regard to territory adjacent and having the same geographical characteristics but not similarly developed.

The court specially found that the territory embraced in the ordinance was one in which buildings had not been erected exceeding forty feet in height, with the exception of one apartment house which was at the time in the course of construction, which finding is supported by the evidence. Under these circumstances the legislative body may well have thought that it would be unjust to prevent other tall buildings in the immediate neighborhood of the tall structures already constructed, whereas no such injustice would be caused by passing the ordinance with reference to the territory which had not as yet been so developed. ■ That the ordinance restricting the height of buildings does not apply to the entire city does not invalidate it (*Ex parte Hadacheck*, 165 Cal. 416, 422 [L. R. A. 1916B, 1248, 132 Pac. 584]; *Ex parte Quong Wo,* 161 Cal. 220 [118 Pac. 714]; *Brown* v. *City of Los Angeles,* 183 Cal. ·783, 790 [192 Pac. 716]).

■ In our opinion there is no merit in appellants' further assertion that the ordinance was enacted solely for aesthetic purposes. On the contrary, the record shows that

it was passed for safety, public convenience, comfort, general welfare, prevention of and spread of fire, for the conservation of sunlight and air, the prevention of congestion of streets due to overcrowding, as well as for aesthetic purposes. ''That high buildings in densely populated areas are injurious to health and increase fire hazards, resulting in menace to the safety of persons and .property, is scarcely open to question. That the police power may be exerted to promote the public health and safety is so well established that it is a truism in the law. Granting that the more scientific and satisfactory way of accomplishing this result, so far as high buildings in populous centers constituting a menace to public health and safety are concerned, is by means of the so-called zoning ordinances, it cannot be said that the legislature may not directly accomplish that which it may do indirectly'' (*Atkinson* ·v. *Piper*, 181 Wis. 519 [195 N. W. 544, 547]).

▉ Appellants' contention that the ''state zoning law (Stats. 1917, p. 1419) applies to San Francisco'' is answered by the following contained in the opinion in *Brougher* v. *Board of Public Works, supra:* ''By virtue of the Constitution and this charter amendment the board of supervisors of said city and county is given plenary power to legislate in all purely municipal matters, subject only to such restrictions as are found in its charter (*Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441 [166 Pac. 351]; *Heilbron* v. *Sumner*, 186 Cal. 648 [200 Pac. 409]). . . . Petitioners claim that under this subsection of the charter (subsec. 42 of sec. I, chap. II of art. II) the board of supervisors is confined to the enactment of ordinances which have for their object and purpose the 'improvement and beautification' of public streets, parks, buildings and other public properties, and that it is without authority or jurisdiction to legislate regarding private property. . . . But even if this· provision contains the limitation upon the powers of the board of supervisors as contended for by petitioners, there are other provisions of the charter which by their terms confer upon the board of supervisors of said city and county all the police power invested in said municipality by the Constitution of the state, and it is by virtue of the police power possessed by municipalities that they are authorized to enact zoning ordinances

(*Miller* v. *Board of Public Works,* 195 Cal. 477 [38 A. L. R. 1479, 234 Pac. 381])."

█ As to the contention that the ordinance is void because no notice of the hearing was published in any newspaper, it may be said it appears that at the trial plaintiffs introduced in evidence ordinance No. 7519 (new series). In such a situation it is held that the burden is upon one attacking an ordinance for "want of publication to show affirmatively and satisfactorily that it has not been published." (Sec. 906, McQuillin, Mun. Corps., 2d ed.) "And the burden of proving failure to publish rests on one who denies the publication and validity of the ordinance" (sec. 910, McQuillin, Mun. Corps., 2d ed.). In *Barber Asphalt Pav. Co.* v. *Jurgens,* 170 Cal. 273 [9 A. L. R. 597, 149 Pac. 560, 563], the following language appears: "In *Van Buren* v. *Wells,* 53 Ark. 377 [22 Am. St. Rep. 214, 14 S. W. 38], it was held that the burden of proving publication was not placed upon the person asserting a right under the statute but upon the one denying its validity. See, also, *Muir's* v. *Bardstown,* 120 Ky. 750 [87 S. W. 1096]; *Missouri Pac. Co.* v. *Chick,* 6 Kan. App. 482 [50 Pac. 605]; McQuillin, Mun. Corps., section 864." It would therefore appear that under the circumstances the burden of at least making an attempt at proof of want of publication was cast upon plaintiffs.

*City of Utica* v. *Hanna,* 202 App. Div. 610 [195 N. Y. Supp. 225], cited by appellants, involved the question of statutory construction whether or not the legislative body followed the procedure required by the statute granting zoning power and is not analogous to the situation presented here. The statute there was construed to require the adoption of a general plan covering the entire city before the passage of a zoning ordinance. We have no such statute applicable to the city and county of San Francisco.

█ It is not for the court to pass upon the general expediency or effectiveness of the legislation called in question, but to determine whether it is valid. Such legislation will be sustained if on any ground it appears to be within the scope of the police power and not an infringement of constitutional or statutory limitations, for the legislative body is under no obligation to explain its purpose or motives in the enactment of laws. It is not for the courts to interfere with the discretion vested in the legislative body so

long as the limitations on the exercise of the power are not infringed.

The foregoing renders unnecessary discussion of the question of damages and attorney's fees.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 30, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 28, 1930.