LANDMARK LAND COMPANY, INC.,
Plaintiff-Appellant,

and

Harsh Investment Corp. and Southmoor
Park Shopping, Inc., Plaintiffs,

v.

The CITY AND COUNTY OF DENVER;
the City Council of the City and County
of Denver, Defendants-Appellees,

and

Southmoor Park East Homeowners Association, Inc., and Thomas P. McCallin,
Intervenors/Defendants-Appellees.

HARSH INVESTMENT CORP.,
Plaintiff-Appellant,

and

Landmark Land Company, Inc., and
Southmoor Park Shopping,
Inc., Plaintiffs,

v.

The CITY AND COUNTY OF DENVER;
the City Council of the City and County
of Denver, and its members, Cathy
Reynolds, Robert Crider, William A.
Scheitler, T.J. Hackworth, M.L. Sandos,
Paul A. Hentzell, Paul L. Swalm, John
J. Silchia, Edward F. Burke, Jr., King
M. Trimble, Salvadore Carpio, Cathy
Donohue, William R. Roberts; the Honorable William H. McNichols, Jr., Mayor of the City of Denver; the Building
Department of the City and County of
Denver, and Jack Tanigawa, Acting Director of the Building Department of
the City and County of Denver, Defendants-Appellees,

and

Southmoor Park East Homeowners Association, Inc., and Thomas P. McCallin,
Intervenors/Defendants-Appellees.

SOUTHMOOR PARK SHOPPING, INC.,
Plaintiff-Appellant,

and

Harsh Investment Corp. and Landmark
Land Company, Inc., Plaintiffs,

v.

The CITY AND COUNTY OF DENVER,
State of Colorado, a Municipal Corporation, and the City and County of Denver, State of Colorado, Defendants-Appellees,

and

Southmoor Park East Homeowners Association, Inc. and Thomas P. McCallin,
Intervenors/Defendants-Appellees.

Nos. 84SA400, 84SA410, and 84SA413.

Supreme Court of Colorado,
En Banc.

Dec. 2, 1986.

Rehearings Denied Dec. 22, 1986.

Calkins, Kramer, Grimshaw & Harring, Susan E. Burch, Charles E. Norton, Denver, for Landmark Land Company, Inc.

Holme Roberts & Owen, Daniel S. Hoffman, Donald K. Bain, Jeffrey A. Chase, Denver, for Harsh Investment Corp.

Sherman & Howard, Joseph J. Bronesky, Marla Music, Denver, for Southmoor Park Shopping, Inc.

Stephen H. Kaplan, City Atty., Robert M. Kelly, Asst. City Atty., Denver, for City and County of Denver and the City Council of the City and County of Denver.

Rothgerber, Appel & Powers, James M. Lyons, Denver, for Southmoor Park East Homeowners Association, Inc. and Thomas P. McCallin.

ROVIRA, Justice.

These three cases, which were consolidated before trial, all involve challenges to section 10–62.5 of the Revised Municipal Code of the City and County of Denver (Code), which extended mountain view protection to Southmoor Park in 1982. The three appellants, Harsh Investment Corp., Landmark Land Company, Inc., and Southmoor Park Shopping, Inc., own land in the area affected by section 10–62.5. They brought suit against the City and County of Denver alleging substantive,

procedural, and constitutional defects in the ordinance. The trial court, hearing the case without a jury, held the ordinance was valid and dismissed all of the appellants' claims. The appeal comes directly to this court because of the constitutional questions involved. § 13–4–102(1)(b), 6 C.R.S. (1973). We affirm the judgment of the trial court.

## I.

The appellants have for years owned land in southeast Denver in an area bounded by Interstate 25 on the west, Hampden Avenue on the north, and Monaco Boulevard on the east. Much of this land is currently being utilized as commercial property, and the zoning classification covering it, B–3,[1] allows both residential and business (including office high-rise) use. Code §§ 59–306 et seq.

In 1980, Landmark announced plans to build a 21–story office building on its land, which the applicable zoning ordinance allows. No building permit was ever obtained by Landmark. The building proposal distressed many of the residents in the area, and, as a result, a neighborhood association, Southmoor Park East Homeowners Association, Inc., (SPEHA) opposed the

proposed high-rise development. Among other things, SPEHA submitted both rezoning and downzoning proposals for the area. After the enactment of section 10–62.5, the zoning proposals were withdrawn.

Section 10–62.5 itself was offered to the city council, through a councilman, at SPEHA's suggestion. The Denver Planning Board recommended against it; nonetheless, the city council adopted section 10–62.5 on July 19, 1982. No record of the discussion or enactment, other than the voting tally sheet, exists from the public hearing that was held.

Section 10–62.5 is an amendment to Denver's Mountain View Ordinance. Code §§ 10–56 et seq. (1986).[2] The amendment, with an incorporated map, covers several hundred lots in addition to the appellants' land. It provides maximum height for buildings on the west side of Southmoor park, allowing more height the farther the buildings are located from a specified reference point within Southmoor Park.[3]

However, there is an exception that allows a height of forty-two feet for any structure in an area zoned for business covered by the amendment. Code § 10–62.5(d)(1).[4] Subsection (d)(2) provides an exception for existing structures and also

---

1. The land of appellants Landmark and Southmoor Park Shopping is zoned B–3; the land of appellant Harsh is zoned R–4.

2. The Mountain View Ordinance was originally passed in 1950. It is based on findings by the city council that the mountains were part of Denver's "unique environmental heritage" and that protection of mountain views would promote aesthetic enjoyment, tourism, and civic pride.

    The original ordinance protected the mountain view from five city parks. It was amended in 1983, adding two other parks to the list of protected view areas.

    Since section 10–62.5 is simply an amendment to the original ordinance, the council did not need to restate the reasons that mountain views are deserving of protection in the amendment itself; those reasons are implicitly incorporated into the amendment.

3. The amendment provides, in part,

    (a) *Adoption of map.* The attached map shall be and hereby is approved and adopted....

    (b) *Limitations on construction.* No part of a structure within the area on the attached map indicated by shading or crosshatching shall exceed an elevation of five thousand five hundred forty-eight (5,548) feet above mean sea level plus two (2) feet for each one hundred (100) feet that said part of a structure is horizontally distant from the reference point....

    (c) *Reference point.* The reference point is a point having an elevation of five thousand five hundred forty-eight (5,548) feet above mean sea level....

    Code § 10–62.5

4. As originally adopted, subsection (d)(1) provided a forty-two foot maximum for all structures in an area covered by § 10–62.5 and zoned for business. The city council changed subsection (d)(1) in July, 1984 (after the complaint had been filed, but before the trial had com-

allows existing structures to be rebuilt to their present height if they are damaged or destroyed.

The appellants' complaints allege that the amendment was without basis in law and arbitrary, and therefore void. The complaints further state that the amendment substantially impairs the rights of the appellants, and, if valid, constitutes a taking requiring compensation. The appellants also request a permanent injunction restraining the city from enforcing the ordinance.

At trial, the court heard evidence on the procedure the city council had used in adopting the amendment. Although not required by law to do so, the council called a public hearing. Representatives of SPE-HA and the appellants spoke. Representatives of the appellants had also voiced their concerns to the Denver Planning Board. The trial court also heard evidence on the amendment's effect on the mountain view, as well as its effect on the value of appellants' property.

The trial judge viewed each of the parks covered by the ordinance and made an express finding that there was a "panoramic mountain view" from the sighting point in Southmoor Park. He held that the amendment was a valid exercise of police power and, although it substantially diminished the value of appellants' property, it did not take all value. Accordingly, the trial court dismissed all appellants' claims.

## II.

■ The threshold issue is whether, in enacting the ordinance, the council was acting in a legislative or in a quasi-judicial capacity. The city concedes that the proce-

dures that must accompany quasi-judicial activity were not performed; therefore, if this amendment is quasi-judicial in nature, it must be overturned.

Denver's characterization of this amendment as legislation is not binding on this court. *City and County of Denver v. Eggert*, 647 P.2d 216 (Colo.1982). *Eggert* reaffirmed that,

> [i]n order to support a finding that the action of a municipal legislative body is quasi-judicial, all of the following factors must exist: (1) a state or local law requiring that the body give adequate notice to the community before acting; (2) a state or local law requiring that the body conduct a public hearing, pursuant to notice, at which time concerned citizens must be given an opportunity to be heard and present evidence; and (3) a state or local law requiring the body to make a determination by applying the facts of a specific case to certain criteria established by law.

*Snyder v. City of Lakewood*, 189 Colo. 421, 425, 542 P.2d 371, 374 (1975).

In the case at bar, none of these tests are met. No state or local law requires a public hearing, notice thereof, or an on-the-record determination by the city council. The fact the city voluntarily held a hearing does not satisfy the test. *Margolis v. District Court*, 638 P.2d 297, 303 (Colo.1981) (dicta).

Further, this amendment fits squarely into our description of legislative action: it is prospective in nature, of general application, and requires the balancing of questions of judgment and discretion. *See Eggert*, 647 P.2d at 222. It does not pertain only to the immediate parties, as quasi-judicial acts typically do, *Eggert* at 222–23, but rather involves judgment based

---

menced), to provide, "[w]ithin any district zoned for business a structure[,] which[ ] under the terms of section 10–62.5 would be limited, may be constructed to a height of forty-two (42) feet above the natural grade." The trial court interpreted the amendment to allow structures in a business zone a height of forty-two feet or the height allowed by the gradation provided in

subsection (b), whichever is higher. Although the change was noted in a stipulated pretrial order, the complaints were not amended to reflect the change. However, under either version of the ordinance, Landmark's proposed building is limited to considerably less that the twenty-one stories it wishes to build.

on possible future facts and is binding on all land that it affects, not just the land of appellants here.

A point could be reached where the "legislation" is so narrow, so directly pointed at certain individuals, and so intertwined with an area that is usually judicial in nature that it would be quasi-judicial in character, even though it could satisfy the *Snyder-Eggert* test. However, this amendment, which is prospective, affects hundreds of lots and landowners, and concerns an area usually governed by legislation, does not reach that point.

We conclude this amendment is legislative in nature; thus the lack of quasi-judicial procedure does not invalidate it.

### III.

■ Once it is established that the amendment is legislation, a presumption of constitutionality attaches; this presumption can only be overcome by proof beyond a reasonable doubt. *Mosgrove v. Town of Federal Heights,* 190 Colo. 1, 4, 543 P.2d 715, 717 (1975). Appellants have raised several arguments regarding the constitutionality of the amendment, but none establish that it is unconstitutional beyond a reasonable doubt. Absent fraud or clear abuse of discretion, the judicial branch should not interfere with legislative actions. *McCray v. City of Boulder,* 165 Colo. 383, 390, 439 P.2d 350, 354 (1977).

### A.

■ Appellants' first assault on the constitutionality of section 10–62.5 stems from their characterization of the amendment as special legislation. Special state legislation is invalid, Colo. Const. art. V, § 25, and this prohibition has long ago been applied to municipalities. *See City and County of Denver v. Bach,* 26 Colo. 530, 58 P. 1089 (1899). The amendment constitutes special legislation, in appellants' view, because it turns control of appellants' land over to SPEHA, and it includes an exception for already existing structures.

The claim that the City Council has turned control of appellants' land over to SPEHA is without merit. While SPEHA proposed and lobbied for the amendment, it was passed by the city council. Holding that the council thereby abdicated its responsibilities would defeat the entire purpose of having a republican form of government; i.e., for a legislature to evaluate competing interests and determine what was the best course of action based on those different interests.

Similarly, leaving exceptions for existing structures—and allowing them to be rebuilt to their current height if destroyed—merely represents a legislative determination that the view is now acceptable, but is not to be further derogated. Such nonconformance exceptions are common in other areas of land use regulation, such as zoning, and have been upheld. *See, e.g., Board of County Comm'rs of Boulder v. Echternacht,* 194 Colo. 311, 572 P.2d 143 (1977).

### B.

■ Appellants' next constitutional attack claims that the amendment is neither rationally nor reasonably related to a legitimate public purpose.

It has been well established that protection of aesthetics is a legitimate function of a legislature. *See Berman v. Parker,* 348 U.S. 26, 32–33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954). Especially in the context of Denver—a city whose civic identity is associated with its connection with the mountains—preservation of the view of the mountains from a city park is within the city's police power.

■ Appellants argue that SPEHA's reason for promoting the amendment was to protect the property values of its members' homes, not to protect the mountain view. Assuming that this is true, it does not affect the validity of the city council's action. The council enacted an amendment that is clearly directly related to preserving

the mountain view—indeed, the gradations in allowable height based on distance from the sighting point are tailored to nothing else.

The forty-two foot exception, equal to approximately three commercial stories, also reflects a balancing of interests involved. Appellants may continue their present use of the land or change to another use, so long as their structures do not interfere with the view plane established by city council.[5] The ulterior motives of SPEHA are of no relevance.

## C.

■ Appellants argue further that, even if the protection of the mountain view is a legitimate purpose, this must be accomplished by a formal rezoning. Once it is settled that protection of aesthetics is a legitimate function and it is clear that this amendment is related to that goal, the city is free to choose the method of implementing that goal, within the constitutional parameter that the enactment is not arbitrary or capricious.[6]

We upheld nonzoning restrictions on the use of property when the concern was a combination of health and aesthetics in *Mosgrove v. Town of Federal Heights*, 190 Colo. 1, 543 P.2d 715 (1975). There, a city ordinance required fencing around garbage containers and perimeters of multi-resident dwellings; we stated,

[a] city may—in the exercise of that power—restrict the use of property in a manner that is not arbitrary or unreasonable and that bears a substantial relationship to a legitimate governmental concern.

190 Colo. 1, 4, 543 P.2d 715, 717 (1975). There is no reason to depart from this analysis simply because the "legitimate governmental concern" is slightly different here than in *Mosgrove*. *See also Collopy v. Wildlife Comm'n*, 625 P.2d 994 (Colo. 1981) (nonzoning restriction on property use upheld against constitutional attack).

Denver has other ordinances that restrict use, bulk, or density (the traditional zoning considerations) through methods other than zoning ordinances. *See, e.g.*, Code §§ 10–81 *et seq.* (restriction on structures in the civic center area); Code §§ 3–21 to 3–25 (restrictions on outdoor advertising along the South Platte River). Also, the state legislature has passed statutes controlling aspects of urban living that are usually regulated by local zoning ordinances. *See, e.g.*, §§ 25–12–101 *et seq.*, 11 C.R.S. (1982 & 1986 Supp.) (noise abatement requirements).

Other states have allowed nonzoning height restrictions in an effort to protect aesthetics. *See, e.g.; Polygon Corp. v. City of Seattle*, 90 Wash.2d 59, 578 P.2d 1309 (1978) (building permit for 13–story building, which complied with all applicable zoning laws, denied due to adverse (primarily visual) environmental concerns); *State of Washington, Dep't. of Ecology v. Pacesetter Construction Co.*, 89 Wash.2d 203, 571 P.2d 196 (1977) (nonzoning ordinance limiting buildings to 35 feet for aesthetic reasons upheld); *Piper v. Meredith*, 110 N.H. 291, 266 A.2d 103 (1970) (nonzoning height restriction based on aesthetics upheld); *Brougher v. Bd. of Public Works*, 107 Cal.App. 15, 290 P. 140 (1930) (nonzon-

---

5. With no record of council's deliberation, the forty-two foot height might appear to be arbitrary. However, the presumption of constitutionality attaches to this figure as well as the rest of the amendment. Appellants have not carried their burden of establishing that there is no rational basis for this exception. It is apparent, especially in light of the city council's amending of this provision two years after the adoption of section 10–62.5, that the height reflects a legislative decision on the best balance between the desire to promote commercial activity and the desire to protect the mountain view.

6. The city, of course, must also follow its own procedures. If this had been a zoning or rezoning, the city would have been bound by the procedures outlined in the city charter. *See Western Paving Construction v. County Comm'rs of Boulder*, 181 Colo. 77, 506 P.2d 1230 (1973).

ing height restriction upheld despite landowner's contention that restrictions on height had to be enacted through zoning).

We conclude this amendment, aimed at protecting the view of the mountains from a city park, is substantially related to a legitimate governmental concern. The fact that the same goal might have been accomplished through other means does not alter this conclusion nor invalidate the restrictions.

### D.

Appellants' final constitutional argument is that section 10–62.5 constitutes a taking of private property without just compensation.

It is the well-settled rule in Colorado that in order to establish that an ordinance which restricts the use of land is unconstitutional, it must be shown that the "ordinance precludes the use of [the] property for *any* reasonable purpose. [Citations]." *Ford Leasing Development Co. v. Board of County Commissioners,* 186 Colo. 418, 426, 528 P.2d 237, 241 (1974) (emphasis in original); *see also Madis v. Higginson,* 164 Colo. 320, 434 P.2d 705, (1967) (due process and just compensation clauses of the Federal and State constitutions do not require that landowner be allowed to make the most profitable use of his property).

▇ Appellants cannot meet this test as their present use of their land may continue under the amendment. They attempt to find a constitutional taking by distinguishing the cases requiring deprivation of all beneficial use of property and arguing that those cases involved a landowner bringing suit to change the zoning ordinance as it existed when the land was purchased.

Such a distinction is unpersuasive. Unless the owner has already established a use allowed under the previous ordinances but not allowed under the "new" ordinances, the chronology of events is irrelevant. *See Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 130, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978) (upholding nonzoning land use restraint; "the submission that appellants may establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable...."); *see also Hadacheck v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (upholding law prohibiting landowner from continuing his otherwise lawful operation of a brickyard); *cf. Westwood Meat Market v. McLucas,* 146 Colo. 435, 361 P.2d 776 (1967) (same power that authorized zoning ordinances authorized modification of same unless vested rights affected).

The judgment of the trial court is affirmed.

DUBOFSKY, J., does not participate.