Kurt F.G. JAFAY, Petitioner,

v.

**BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY, State of Colorado, Respondent.**

No. 91SC622.

Supreme Court of Colorado,
En Banc.

March 8, 1993.

As Modified on Denial of Rehearing
April 19, 1993.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, William S. Stuller, Boulder, Miller, Leher & Steiert, P.C., Martin P. Miller, Littleton, for petitioner.

Gorsuch, Kirgis, Campbell, Walker and Grover, Malcolm M. Murray, Robert C.

Widner, Katharine J. Teter, Denver, Office of the County Atty., Boulder County, Madeline J. Mason, Deputy Boulder County Atty., Boulder, for respondent.

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Thomas J. Ragonetti, J. Bradley Olsen, R. Michael Shomo, Denver, for amici curiae American Planning Ass'n and Colorado Chapter of the American Planning Ass'n.

Hayes, Phillips & Maloney, P.C., Kathleen E. Haddock, Denver, for amicus curiae Colorado Mun. League.

Office of the County Atty., Douglas County, J. Mark Hannen, County Atty., County of Douglas, Castle Rock, for amicus curiae Colorado Counties, Inc.

Justice VOLLACK delivered the Opinion of the Court.

Petitioner Kurt F.G. Jafay (Jafay) petitions from the court of appeals opinion in *Jafay v. Heath*, No. 90CA0375 (Colo.App. 1991), an opinion not selected for official publication. Jafay commenced an action against the Board of County Commissioners of Boulder County (the Board), alleging, *inter alia*, that a change in county zoning regulations constituted a taking of his property without either due process or just compensation, in contravention of both the Colorado and United States Constitutions. The district court granted summary judgment in favor of the Board and against Jafay. The court of appeals affirmed the district court order. We affirm in part, reverse in part, and remand the case with instructions.

## I.

Prior to 1967, Jafay acquired three parcels of land located in Boulder County: one parcel consisting of approximately 134 acres, identified as the Boulder Tech Center;[1] a second parcel consisting of approximately six acres, identified as the Boulder Tech Center Plaza (the Plaza);[2] and a third unnamed parcel consisting of approximately eighty acres. When Jafay acquired the parcels, the Boulder Tech Center was zoned for agricultural and rural uses. On February 2, 1967, the Board adopted a resolution that changed the zoning classifications of Jafay's parcels. The Boulder Tech Center was upzoned to light industrial use, and the Plaza was upzoned to commercial use.

On April 6, 1978, the Board adopted the "Master Plan for the Physical Development of Boulder County," also termed the "Boulder County Comprehensive Plan" (the Comprehensive Plan). Through the Comprehensive Plan, the Board attempted to direct new urban growth into community service areas, where a full range of urban services would be provided, and to correspondingly limit the economic burden of "urban sprawl" on taxpayers.

As a result of the zoning changes, Jafay submitted a conceptual master plan to develop the Boulder Tech Center in 1981. Jafay formed a plan to construct an industrial park in the Boulder Tech Center. Jafay installed water and sewer lines, fire hydrants, telephone lines, electrical and gas lines, asphalt paving, curbs, and gutters on the Tech Center parcel. Jafay installed water and sewer mains on the Plaza parcel. Jafay spent in excess of $1 million in building on-site improvements.

The 1981 plan was eventually rejected. In late 1981, the Boulder County Planning Staff submitted a summary to the Board wherein it stated that it could not fully implement the Comprehensive Plan because the implementation would require Boulder County to purchase a large amount of property to maintain as open space. Jafay submitted a second plan to develop the Boulder Tech Center. In order to implement his development plan, Jafay filed an application with the Boulder Land Use Planning Department to incorporate

---

1. The Boulder Tech Center is bounded as follows: on the north by Monarch Road; on the east by Monarch Park; on the south by State Road 52; and on the west by Colorado Route 119. Immediately west of the Boulder Tech Center, IBM maintains an office complex, while the Gunbarrel Industrial Park lies to the southwest of the Boulder Tech Center.

2. The Plaza is located to the northwest of the Tech Center.

the Boulder Tech Center into the Niwot Community Service Area early in 1982. Between 1983 and 1984, Jafay entered into contracts with the Niwot Community Service Area and the Left Hand Water Supply Company to provide sewer and water services, respectively, to the Boulder Tech Center over an extended period of time. Jafay ultimately withdrew his application for annexation after receiving advice from a county employee that annexation into the Niwot Community Service Area was not a prerequisite to developing the Boulder Tech Center.

On October 4, 1984, the Board approved a plat for the development of the Boulder Tech Center. According to the plat, the Boulder Tech Center was subdivided into six lots and fourteen outlots.[3] Lots one through five comprised "Phase I" of the approved development plan. Seven of the outlots, referred to as "outlots F through L," comprised "Phase II" of the two-stage development plan. Phase I and Phase II comprised approximately thirty to thirty-five acres. No development was approved for five of the outlots, referred to as "outlots A through E." Outlots A through E were composed of the remaining 100 acres of the Boulder Tech Center.

In July of 1985, the Board considered "a proposed zoning plan consisting of comprehensive text and map amendments to the *Boulder County Zoning Resolution* (including the zoning district maps) in accordance with the *Boulder County Comprehensive Plan.*" The Board indicated that the Land Use Department of Boulder County had proposed rezoning so the zoning regulations would conform to the Comprehensive Plan. The Land Use Department had reviewed all the land in the county, and had held numerous public meetings to ascertain the opinions of Boulder County residents. The Board held a public meeting

and, on July 23, 1985, adopted a temporary zoning resolution.[4]

The Boulder County Planning Commission subsequently conducted hearings on the proposal between August 21, 1985, and September 25, 1985. Ultimately, the Planning Commission recommended a rezoning resolution to the Board that entailed rezoning 25,340 acres through map amendments. The resolution also proposed text amendments which applied generally throughout the county. During the fall of 1985, the Board sent several direct mailings to affected property owners. Jafay received a letter dated October 21, 1985, informing him of the proposed zoning changes and indicating that such changes were required to prevent urban development where installation of public services was not planned.

On October 1, 1985, Jafay had entered into a subdivision agreement with the Board. The agreement stated that Jafay, as the subdivider, was required to construct streets, sidewalks, curbs, utilities, drainage facilities, water and sewer facilities, flood protection devices, and other improvements.

After publishing notices in two newspapers of general circulation throughout Boulder County, the Board held public hearings regarding adoption of proposed zoning resolution 85–193 on December 10 through December 12. Jafay presented evidence during the hearing as to why the Boulder Tech Center should not be downzoned. Jafay sought permission to present four or five hours of evidence, but the Board limited his presentation to fifteen minutes. Jafay introduced affidavits and written testimony of: (1) Nolan Rosall, an independent consultant responsible for the design of the Boulder Tech Center; (2) Dan Hall, the project manager for the Boulder Tech Center; (3) Marvin Bothal, a public accountant; and (4) Peter Charlton, a real estate appraiser. Jafay also offered six-

3. An outlot is defined as a measured piece of land contained within subdivided land or other plat which is not eligible for inclusion within a building lot designation.

4. Numbered 85–87, the temporary zoning resolution rezoned approximately twelve percent of

the unincorporated land in Boulder County. A trial court declared the ordinance invalid, and the court of appeals affirmed that declaration in *Dollaghan v. County of Boulder,* 749 P.2d 444 (Colo.App.1987).

teen exhibits. The Board unanimously adopted and recorded resolution 85–193 on December 17, 1985. As a result of the resolution, Phase I and Phase II were zoned as existing light industrial, while outlots A through E were rezoned as agricultural.

On January 16, 1986, Jafay filed a complaint in district court against the Board.[5] Jafay sought review of the Board's actions under C.R.C.P. 106(a)(4), contending that the Board, in exercising a quasi-judicial function, acted arbitrarily and capriciously when downzoning his property. Jafay alternatively argued that, if the district court found that the Board's actions were legislative and not quasi-judicial, then the resolution should be declared invalid pursuant to C.R.C.P. 57. Jafay additionally contended that the resolution amounted to a confiscatory taking without either payment of compensation or due process of law in violation of both the United States and Colorado Constitutions. Jafay requested that the district court both award him $7.4 to $10 million as just compensation for the diminution in value of his property, and declare that the parcels retain the light industrial and commercial zoning classifications, among other things.

On March 3, 1986, the Board filed a motion to consolidate the action initiated by Jafay with several actions initiated by other property owners challenging resolution 85–193.[6] The district court later granted the motion to consolidate. The Board filed a motion to dismiss all rule 106 claims on the ground that its actions were legislative and not quasi-judicial. On May 28, 1986, the district court held a hearing on the Board's motion to dismiss. The district court found that it was required to determine whether the Board's actions in adopting resolution 85–193 were legislative or quasi-judicial. While considering *Snyder v. City of Lakewood*, 189 Colo. 421, 542 P.2d 371 (1975), the district court concluded that the Board's action was legislative "in this case where 4,000 properties and 25,000 acres are rezoned in a sweeping policy change." The district court concluded that judicial review of the Board's actions was proper under C.R.C.P. 57, and not under rule 106. The district court dismissed the rule 106 claims for lack of subject matter jurisdiction.

On April 15, 1987, the Board sought to dismiss the inverse condemnation claims on the ground that the appropriate remedy is not in the nature of damages but rather a declaration ruling that the resolution at issue was invalid. The Board stated that each of the plaintiffs in the consolidated litigation owned property that was rezoned from either commercial or industrial to agricultural. The Board contended that the takings claims should be dismissed on the grounds that no plaintiffs had received a final decision regarding the permissible potential development of their property, and thus a court could not determine whether a taking for public use had occurred. The Board additionally argued that the plaintiffs' failure to obtain a final judgment rendered their takings claims not ripe for adjudication.

The Board filed an affidavit of James Brouillette (Brouillette), the Assistant Land Use Director of Boulder County, attached to its brief in support of the motion to dismiss the takings claims. With respect to Jafay's property, Brouillette stated that the Tech Center

> was subdivided and platted in 1984; as a result of the adoption of Resolution No. 85–193 approximately 30 acres with pre-existing platted building lots are zoned Existing Light Industrial ("ELI") and approximately 104 acres of pre-existing platted outlots are zoned Agricultural.
>
> b. On the thirty acres zoned ELI, Plaintiff Jafay has the right to apply for

---

5. In his complaint, Jafay also named three county commissioners in their individual capacities. On July 3, 1985, the district court dismissed Jafay's claims for relief against the county commissioners in their individual capacities on the ground that officials acting in a legislative capacity are entitled to absolute immunity.

6. The Board filed the motion to consolidate in an action captioned *Dollaghan v. Board of County Commissioners*, No. 86CV0072–2 (Dist. Ct., Boulder County).

building permits for all uses and densities previously approved by the [Board] on October 4, 1984, through the subdivision process.

c. In addition, Plaintiff Jafay may pursue the following applications regarding the approximate 104 acres rezoned Agricultural (since the portion of the [Tech Center] property zoned Agriculture was platted as outlots, which under BCZR 28–267 are not eligible to be included in a building lot designation, the applications described herein include those available without replatting, and those which may be combined with an application to replat)[.]

Jafay responded that the uses permitted for agricultural zoning would frustrate his expectations founded on years of light industrial zoning, and destroy the property's value.

In April of 1988, plaintiffs in the consolidated litigation—excluding Jafay—stipulated to a dismissal of their claims against the Board.

On June 7, 1989, Jafay filed a motion to amend his complaint against the Board. Jafay stated that he no longer had complaints regarding both the Plaza and the unnamed eighty-acre parcel. Also, in his amended complaint, Jafay stated that he was no longer the title owner of the Boulder Tech Center, as a bank, holding promissory notes secured by deeds of trust, had foreclosed on the property. Jafay requested both damages and a declaration that the Board's actions in adopting resolution 85–193 violated the Colorado and United States Constitutions. The district court subsequently granted Jafay's motion to amend his complaint.

On August 9, 1989, the Board filed a motion for summary judgment in response to Jafay's amended complaint. The district court heard oral argument on the Board's motion for summary judgment on December 4, 1989, and, on January 17, 1990, the

district court entered a minute order granting the Board's motion.

Jafay appealed the order granting the Board's motion for summary judgment. In an unpublished opinion, the court of appeals affirmed the district court's minute order. The court of appeals noted that "[n]o issues have been raised concerning the effects of either the bankruptcy or the conveyance." The court of appeals reasoned that summary judgment in favor of the Board was proper because the new zoning resolution did not prevent Jafay from executing plans authorized prior to the adoption of the resolution. Thus, the court of appeals found that Jafay "continued to have the same rights to construct structures and engage in all uses provided for in the subdivision agreement, even though the zoning changed." The court of appeals concluded that, "[s]ince the agreement between the County and Jafay remains the controlling factor, there is no merit to Jafay's contentions."

Jafay petitioned this court for a writ of certiorari, contending that: (1) he is entitled to relief under C.R.C.P. 106(a)(4); (2) he was denied procedural due process of law; (3) the Board's actions amounted to an unlawful taking of private property without just compensation; and (4) he is entitled to relief under the doctrine of equitable estoppel. We individually address each contention.

## II.

## AVAILABILITY OF JUDICIAL REVIEW

■ Relying on *Snyder v. City of Lakewood,* 189 Colo. 421, 542 P.2d 371 (1975),[7] Jafay contends that he is entitled to damages based on the Board's failure to provide him a quasi-judicial hearing pursuant to C.R.C.P. 106(a)(4). Jafay contends that, since the Board's actions in rezoning his property were not legislative, he is entitled to judicial review under C.R.C.P. 106(a)(4).

7. *Snyder v. City of Lakewood,* 189 Colo. 421, 542 P.2d 371 (1975), was overruled in *Margolis v. District Court,* 638 P.2d 297, 305 (Colo.1981), to the extent that it "might be read as indicating

that rezoning is not legislative for the purpose of exercising the constitutional powers of referendum and initiative."

C.R.C.P. 106(a)(4) provides that relief is available in district courts

> [w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law[.]

In *Snyder*, this court was confronted with the issue of whether a rezoning ordinance constituted legislative or quasi-judicial action in a case where a church filed an application to rezone certain church property. *Id.* at 423, 542 P.2d at 372. In determining whether review was appropriate under C.R.C.P. 106(a)(4) or under C.R.C.P. 57, the *Snyder* court defined the test for quasi-judicial action as requiring findings that

> (1) a state or local law requiring that the body give adequate notice to the community before acting; (2) a state or local law requiring that the body conduct a public hearing, pursuant to notice, at which time concerned citizens must be given an opportunity to be heard and present evidence; and (3) a state or local law requiring the body to make a determination by applying the facts of a specific case to certain criteria established by law.

*Id.* at 425, 542 P.2d at 374. The *Snyder* court concluded that the ordinance, as enacted pursuant to statutory criteria and after notice and a public hearing, was quasi-judicial in nature and subject to review under C.R.C.P. 106(a)(4). *Id.* at 426, 542 P.2d at 375.

This court has applied and refined the *Snyder* test on several occasions since 1975. *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 624 (Colo.1988); *Landmark Land Co. v. City and County of Denver*, 728 P.2d 1281, 1284 (Colo.1986); *City and County of Denver v. Eggert*, 647 P.2d 216, 221 (Colo.1982). While stating the three-factor *Snyder* test, we defined quasi-legislative action as distinguished from quasi-judicial action by noting that the former "is prospective in nature, is of general application, and requires the balancing of questions of judgment and discretion" in *City and County of Denver v. Eggert*, 647 P.2d at 222.

In *Eggert*, a county commissioner ordered a chemical waste management company to cease its practice of depositing hazardous waste in a particular landfill. *Id.* at 218. The company subsequently sought judicial review of the county commissioner's order in district court pursuant to C.R.C.P. 106(a)(4). We concluded that the challenged order was not legislative because it was "not a generalized conclusion of future applicability. It pertain[ed] only to [one] site and not to any other location or parties." *Id.* at 223.

In *Landmark Land Co.*, we again were required to determine whether a city council's actions in amending a mountain-view ordinance were legislative or quasi-judicial. *Landmark Land Co.*, 728 P.2d at 1284. Our analysis turned in part on the scope of the amendment's impact. We thus observed that the amendment did "not pertain only to the immediate parties, as quasi-judicial acts typically do, but rather involve[d] judgment based on possible future facts and is binding on all land that it affects, not just the land of appellants here." *Id.* at 1284–85. We concluded that the amendment constituted legislative action, in part because it was prospective and affected hundreds of landowners. *Id.* at 1285.

Most recently, in *Cherry Hills Resort Development Co.*, we distinguished legislative from quasi-judicial action where a developer sought approval to construct hotel and residential units in a resort area district. *Cherry Hills Resort Dev. Co.*, 757 P.2d at 623. We stated that

> [l]egislative action is usually reflective of some public policy relating to matters of a permanent or general character, is not normally restricted to identifiable persons or groups, and is usually prospective in nature. Quasi-judicial action, on the other hand, generally involves a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy consider-

ations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question.

*Id.* at 625 (citations omitted). We discussed both *Snyder* and *Eggert,* and concluded that "there is no litmus-like test" for identifying quasi-judicial action. *Id.* at 627. We declined to restrictively read *Snyder* as only standing for the proposition that "a preexisting ordinance or statute mandating notice and a public hearing is an indispensable component of quasi-judicial action." *Id.* at 626. Rather, we resolved that

> [t]he central focus, in our view, should be on the *nature of the governmental decision and the process by which that decision is reached.* If, for example, the governmental decision is likely to adversely affect the protected interests of specific individuals, and if a decision is to be reached through the application of preexisting legal standards or policy considerations to present or past facts presented to the governmental body, then one can say with reasonable certainty that the governmental body is acting in a quasi-judicial capacity in making its determination.

*Id.* (emphasis added). We concluded that the resolution at issue was quasi-judicial because it "pertained only to the use of the particular site in question, and was not a decision affecting future land use on a city-wide basis." *Id.* at 628.

In the present case, the Board adopted resolution 85–193 in order to adapt zoning regulations to the Boulder County Comprehensive Plan previously passed by the Board. Unlike the ordinances at issue in *Snyder, Eggert,* and *Cherry Hills Resort Development Co.,* resolution 85–193 does not apply only to one site, and only to particular parties involved in the litigation. Resolution 85–193 expressly establishes county-wide policy regarding future urban growth.[8] By its terms, the resolution applies to all unincorporated areas within Boulder County. The district court found that the resolution affected 4,000 parcels of land encompassing 25,000 acres. The district court ruled that the Board's actions were quasi-legislative, and dismissed the rule 106 claims. Jafay was one of many plaintiffs in consolidated litigation who sought to challenge application of the resolution to their property. While the Board provided notice and public hearings, we conclude that the Board's actions in adopting the resolution were quasi-legislative in nature based on the prospective nature and broad impact of the resolution. Accordingly, Jafay is not entitled to relief under C.R.C.P. 106(a)(4).

## III.

## PROCEDURAL DUE PROCESS

■ Jafay contends that the Board's failure to provide him a quasi-judicial hearing violated his right to procedural due process of law under both the United States and Colorado Constitutions. Jafay specifically contends that he was denied the right to call and cross-examine witnesses, and that he was denied the right to an impartial decision-maker.[9] We conclude that Jafay's

8. An amendment signed on the date of adoption, December 17, 1985, states:

The text and map amendments to the Zoning Resolution are designed and enacted for the purpose of lessening the congestion in the streets or roads or reducing the waste of excessive amounts of roads, promoting energy conservation, securing safety from fire, floodwaters, and other dangers, providing adequate light and air, classifying land uses and distributing land development and utilization, protecting the tax base, securing economy in governmental expenditures, fostering the state's agricultural and other industries, and protecting both urban and nonurban development.

. . . .

Because of the large number of properties involved in these comprehensive amendments and because of the generally applicable nature of these amendments, it has been necessary to act under the Board's legislative powers and procedures and it would have been impossible, in light of the Board's other duties, to have altered the zoning maps and text through a series of individualized quasi-judicial proceedings.

9. Jafay additionally contends that he has an independent federal remedy for damages under 42 U.S.C. § 1983. Jafay contends that the district court erred by not addressing his § 1983 due process claim. Based on our conclusion

rights to procedural due process have not been infringed on in this case.

"The essence of due process is basic fairness in procedure." *deKoevend v. Board of Educ. of West End Sch. Dist. RE–2*, 688 P.2d 219, 227 (Colo.1984) (relying on *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Lamm v. Barber*, 192 Colo. 511, 565 P.2d 538 (1977) (disapproved on other grounds); *Mountain States Tel. and Tel. Co. v. Department of Labor and Employment*, 184 Colo. 334, 520 P.2d 586 (1974)); *see Van Sickle v. Boyes*, 797 P.2d 1267, 1273 (Colo.1990). "Whether particular procedures adopted to review determinations affecting property interests satisfy due process standards depends upon the circumstances of the particular case." *Anderson v. Colorado State Dep't of Personnel*, 756 P.2d 969, 976–77 (Colo.1988) (relying on *Curnow v. Yarbrough*, 676 P.2d 1177 (Colo.1984); *Carberry v. Adams County Task Force on Alcoholism*, 672 P.2d 206 (Colo.1983)). Thus, "[t]he procedural protections required by the state and federal due process clauses cannot be fixed by formula; 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *People v. Kibel*, 701 P.2d 37, 43 (Colo.1985) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)); *see Van Sickle*, 797 P.2d at 1273.

With respect to zoning changes, we note that the General Assembly has imposed on boards of county commissioners an obligation to "hold a public hearing ... and [give] at least thirty days' notice of the time and place of such hearing ... by at least one publication in a newspaper of general circulation in the county." § 30–28–116, 12A C.R.S. (1986). We have accordingly stated that, "[i]n zoning, notice should unambiguously set forth the information which would give adequate warning to all persons whose rights could be adversely affected by any action of the zoning entity, so they may appear and have an opportunity to be heard." *Sundance Hills Homeowners Ass'n v. Board of County Comm'rs*, 188 Colo. 321, 325, 534 P.2d 1212, 1214 (1975). We have found the requirements of due process satisfied when opponents of an order enforcing uses permitted in a specific zoning district fully participated in a hearing and failed to object to any notice provisions. *Zavala v. City and County of Denver*, 759 P.2d 664, 668 (Colo.1988).

Section 30–28–116 provides that boards of county commissioners may amend any provisions of zoning resolutions from time to time. § 30–28–116, 12A C.R.S. (1986). The section also states that, "[b]efore finally adopting any such amendment, the board of county commissioners shall hold a public hearing thereon, and [give] thirty days' notice of ... such hearing." *Id.* Jafay does not contest the adequacy of the notice he received in this case. Rather, he contends that he was denied the right to call and cross-examine witnesses. Jafay, however, appeared before the Board, and introduced approximately four affidavits and sixteen exhibits into the hearing record. Section 30–28–116 does not purport to give Jafay a right to an unlimited hearing with respect to zoning changes. Jafay additionally contends that he was denied the right to an impartial decision-maker on the ground that the Board had an interest in Jafay's property. Jafay presents no additional evidence, however, that the Board was actually biased in its conduct. *See Van Sickle*, 797 P.2d at 1274 ("An administrative hearing officer is presumed to be impartial, and the party challenging the administrative action has the burden to prove that the hearing officer was not impartial." (Citations omitted.)); *Mountain States Tel. and Tel. Co. v. Public Utils. Comm'n*, 763 P.2d 1020, 1028 (Colo.1988) ("A decision maker is not disqualified on due process grounds ... if there is no showing that the decision maker is incapable of judging the particular controversy fairly on the basis of its own circumstances."). We are not persuaded that Jafay was denied fundamentally fair process in this case.[10]

that the process Jafay received was fundamentally fair, we do not address this contention.

10. We recently had cause to determine whether certain opponents of a city council action were denied both adequate notice of a city council

## IV.

## A TAKING OF PROPERTY WITHOUT JUST COMPENSATION

Jafay argues that the district court erred in granting summary judgment in favor of the Board on his claim that the rezoning amounted to a taking of property without just compensation. We conclude that summary judgment in favor of the Board was inappropriate in this case because a genuine issue as to a material fact exists.

### A.

### Summary Judgment

Summary judgment is only warranted when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Peterson v. Halsted*, 829 P.2d 373, 375 (Colo.1992); *see* C.R.C.P. 56(c); *Seeley v. Board of County Comm'rs*, 791 P.2d 696, 701 (Colo.1990); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339–40 (Colo. 1988). "The purpose of summary judgment is to permit the parties to pierce the formal allegations of the pleadings and save the time and expense connected with trial when, as a matter of law, based on undisputed facts, one party could not prevail." *Peterson*, 829 P.2d at 375 (relying on *Mt. Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231, 239 (Colo. 1984)).

The moving party has the burden of proving that there is no triable factual issue, *Seeley*, 791 P.2d at 701; *Churchey*, 759 P.2d at 1340, and the party against whom summary judgment is sought "is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts." *Peterson*, 829 P.2d at 376. All doubts as to the existence of a disputed material fact must be resolved in favor of the nonmoving party. *Churchey*, 759 P.2d at 1340. "A court must consider 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" in determining whether summary judgment is warranted. *Peterson*, 829 P.2d at 376 (quoting C.R.C.P. 56(c)).

Considering the principles of summary judgment in conjunction with the principles governing takings claims, we cannot conclude that there were no undisputed issues of material fact in the present case.

### B.

### Takings Analysis

Section 15 of article II of the Colorado Constitution provides that "[p]rivate property shall not be taken ... for public or private use, without just compensation."[11] In interpreting this constitutional guarantee, we have repeatedly stated that "[a] governmental regulation that prohibits *all*

---

hearing and a meaningful opportunity to be heard in violation of their rights to procedural due process in contravention of the United States and Colorado Constitutions in *State Farm Mutual Automobile Insurance Co. v. City of Lakewood*, 788 P.2d 808, 814 (Colo.1990). In *State Farm*, the City Council of Lakewood approved a preliminary petition authorizing creation of a special district within existing municipal boundaries. *Id.* at 810. We first determined that the city council's action in approving the petition was legislative and not quasi-judicial. We subsequently considered whether opponents of the special district were denied procedural due process. *Id.* at 814.

We held that, "when a municipal body is acting in a quasi-legislative rather than a quasi-judicial capacity, *there is no constitutional requirement for notice and a hearing."* *Id.* (emphasis added). We concluded that "the granting of notice and an opportunity to be heard by the city council was gratuitous, *and not constitu-*

*tionally required." Id.* (emphasis added). Since neither the General Assembly nor the city council was under a constitutional mandate to provide *notice and a hearing,* any *notice and* hearing provided were not constitutionally deficient. *Id.* at 814–15.

In the present case, we have determined that the Board's action in amending the zoning classifications for the unincorporated land within Boulder County was quasi-legislative in nature and not quasi-judicial. We do not find *State Farm* to control our analysis, however, because there was no statutory scheme imposing a requirement to give notice and conduct a public hearing in that case.

11. Jafay additionally presents takings claims under the United States Constitution. Since we conclude that summary judgment was inappropriate under state constitutional analysis, we do not apply federal law at this time.

*reasonable use[s]* of property constitutes a taking within the meaning of ... article II, section 15." *Van Sickle v. Boyes,* 797 P.2d 1267, 1271 (Colo.1990) (emphasis added); *Sellon v. City of Manitou Springs,* 745 P.2d 229, 234 (Colo.1987) ("[A] zoning ordinance that prohibits the use of property for any reasonable purpose will be deemed confiscatory and therefore violative of just compensation ... protections afforded by Colorado's Constitution."); *Landmark Land Co. v. City and County of Denver,* 728 P.2d 1281, 1287 (Colo.1986) (holding that a party must show that an ordinance precludes the use of property for any reasonable purpose in order to prove that the ordinance restricting the use of land is unconstitutional); *Bird v. City of Colorado Springs,* 176 Colo. 32, 37, 489 P.2d 324, 326 (1971) (holding that a landowner must show that no reasonable uses of land exist in order prove an unconstitutional taking); *see generally Cottonwood Farms v. Board of County Comm'rs,* 763 P.2d 551, 554 (Colo.1988) (concluding that no taking occurred because the applicants had not been deprived of all reasonable uses of their property). "[S]o long as [a] zoning ordinance leaves some reasonable use for the property, the ordinance does not violate state constitutional standards." *Sellon,* 745 P.2d at 234.

■ Thus the issue central to a takings inquiry is whether the governmental regulation as applied to the aggrieved landowner's property forecloses all reasonable use of that property. *Van Sickle,* 797 P.2d at 1271–72 ("The issue is whether the Safety Code as applied to Van Sickle's building foreclosed all reasonable use of the building."); *Sellon,* 745 P.2d at 234 (holding that, "so long as the zoning ordinance leaves some reasonable use for the property, the ordinance does not violate state constitutional standards"); *Landmark Land Co.,* 728 P.2d at 1287 ("[I]n order to establish that an ordinance which restricts the use of land is unconstitutional, it must

be shown that the 'ordinance precludes the use of [the] property for *any* reasonable purpose.'" (quoting *Ford Leasing Dev. Co. v. Board of County Comm'rs,* 186 Colo. 418, 426, 528 P.2d 237, 241 (1974))). "Persons owning property at the time it is rezoned may challenge the validity of the new regulation on the ground that it prohibits all reasonable use of the property and therefore constitutes an unconstitutional taking thereof." *Cottonwood Farms,* 763 P.2d at 554. The burden of proving that no reasonable use for the land exists falls on the aggrieved landowner. *Nopro v. Town of Cherry Hills Village,* 180 Colo. 217, 226, 504 P.2d 344, 349 (1970) ("[T]o sustain an attack upon the validity of a zoning limitation, the aggrieved property owner must show that the enforced restriction upon his property will preclude its use for any purpose to which it is reasonably adapted."); *Bird,* 176 Colo. at 37, 489 P.2d at 326 ("In order for there to be a taking, the burden rests upon the landowner to show that he has been deprived of all reasonable uses of his land."); *see Sellon,* 745 P.2d at 234 (finding that the landowners failed to prove that they could not put their property to any reasonable use); *Landmark Land Co.,* 728 P.2d at 1287 (finding that appellants could not meet the test as they could continue their present use of their land under a zoning ordinance amendment).

In the present case, Jafay alleged in his complaint that, "after downzoning, no reasonable economically viable use remains for" the Boulder Tech Center. Jafay alleged that the Boulder Tech Center was entirely unsuited for agricultural uses because the property was surrounded by industrial or economic development zones, and by residential zones.[12] Jafay stated that the Boulder Tech Center was upzoned in 1967 because, as is stated in the Comprehensive Plan, the property was too small for agricultural uses. In paragraph 41 of his complaint, Jafay alleged that the Board

---

12. Jafay specifically alleged in paragraph 34 of his complaint that

[t]he BTC is bordered on two sides with economic development and light industrial zoned areas, and on the third side by residen-

tial zoning. Additionally, on the fourth side, the BTC contains an existing industrial building and industrial development previously approved by the Board.

downzoned the Boulder Tech Center "so that it could be purchased or otherwise acquired inexpensively as permanent open space for Boulder County."

On March 26, 1986, the Board filed a motion to dismiss Jafay's claim for damages premised on a taking of private property without just compensation. Jafay filed a response accompanied by affidavits of Nolan Rosall, Daniel Hall, and Marvin Bothal, among other things. Rosall stated in his affidavit that he planned the phased development of the Boulder Tech Center, and that he previously served as the Director of Planning and Community Development for the City of Boulder. When asked if any reasonable use remained for the northern portion of the Boulder Tech Center after downzoning, Rosall replied:

> To down-zone would be to create economic waste from a land planning and efficient utilization prospective. Only agricultural activities would be allowed on an 82–acre property which is placed in the middle of commercial, industrial, or residential facilities. This is an inefficient use of the land and would destroy the property's value. Indeed, in 1967 when the property was zoned from "A" to "LI" by the County Commissioners, the expressed purpose was that the property was "too small for A uses."

When asked if downzoning of the Boulder Tech Center would provide any direct benefit to the county, Rosall replied:

> The County proposed in the Comprehensive Plan in Map 6, "County Open Space", that the northern portion of this property be acquired and preserved as open space.... Previously, County representatives have stated that such a designation was one of policy only, and did not affect the property's zoning status. To down-zone this property from light industrial to agricultural is in conflict with those statements and is being proposed to reduce the value of the property. This constitutes a "taking" of property rights which should be purchased or otherwise properly acquired if the land is desired for permanent open space.

The Board subsequently filed a second motion to dismiss and brief in support thereof wherein it argued that Jafay's taking claim should be dismissed because Jafay failed to obtain a "final decision" regarding the possible potential development of the Boulder Tech Center.[13] The Board also argued that an agricultural zoning classification "permits a wide range of uses by right; including, in addition to agricultural uses, commercial nursery, veterinary hospital, kennel, and one-family dwelling per 35 acres." The Board attached as an exhibit to the brief an affidavit of Brouillette. Brouillette stated that Jafay could apply for building or special permits which would allow him to construct parks, playgrounds, playfields for daytime uses, and underground facilities, among other things.[14] In response, Jafay contended that none of the uses suggested by the Board was reasonable because, among other things, a plastic tooling plant had already been constructed on a portion of the Boulder Tech Center, and because Jafay invested more than $1 million in installing water and sewer utilities.

On August 9, 1989, the Board filed a motion for summary judgment. The Board contended that Jafay's taking claim was "facial" and not "as-applied," and that, as such, Jafay's claim should be dismissed because Jafay did not file a meaningful application for development of the Boulder Tech Center under the new zoning law. The Board additionally stated that it had previously assumed that Jafay's original complaint stated an as-applied taking claim. The Board argued that the as-applied claim should be dismissed on the grounds that the district court did "not have the fully developed record to properly engage in the

---

13. Specifically, the Board argued that Jafay "failed to avail [himself] of a special corrective procedure which would allow [him] to appeal the rezoning of [his] specific properties in a simplified process designed to correct errors in the adoption of Resolution 85–193."

14. The record reveals that Brouillette provided a second affidavit on August 9, 1989, wherein Brouillette reiterated the permissible uses for the Boulder Tech Center under an agricultural zoning classification.

factual, ad hoc analysis required for an as-applied challenge. Jafay has simply not obtained a final, definitive decision regarding the extent of development which will ultimately be allowed on his property." Jafay conversely contended that he applied for special use permits and for zoning amendments between May and June of 1987.

The district court granted the Board's motion for summary judgment in a minute order, based on "all of the reasons set forth in [the Board's] Motion for Summary Judgment." In an unpublished opinion the court of appeals stated that, "[s]ince the agreement between the [Board] and Jafay remains the controlling factor, there is no merit to Jafay's contentions that his property was taken without just compensation." Slip op. at 4. In other words, the court of appeals reasoned that, since Jafay could develop the thirty acres in Phase I and Phase II, there was no taking as to the remaining one hundred acres of the Boulder Tech Center. We disagree.

■ The fundamental issue central to the determination of a takings claim premised on a zoning change is whether an aggrieved landowner retains any use for which the property is reasonably suited. *Van Sickle*, 797 P.2d at 1271–72; *Sellon*, 745 P.2d at 234; *Landmark Land Co.*, 728 P.2d at 1287. Summary judgment in such a case would not be warranted where, as here, a dispute exists as to whether any reasonable use for the Boulder Tech Center remains in light of Resolution 85–193. Jafay maintains that, under an agricultural zoning classification, there are no uses for which the Boulder Tech Center is reasonably suited, and that the Board so classified the property to render it open space. The Board conversely maintains that reasonable uses for the Boulder Tech Center do in fact exist under Resolution 85–193.

Because reasonable persons could disagree as to whether any reasonable use exists for the Boulder Tech Center, we conclude that summary judgment is not appropriate on this claim.

## V.

### EQUITABLE ESTOPPEL

Jafay contends that the trial court erred in ruling that the Board was not estopped from rezoning his property. Specifically, Jafay argues that he withdrew his application for annexation into the Niwot Community Service Area because he reasonably relied on the county attorney's and the planning department's assurances that annexation was not necessary in order to develop his property. Jafay now seeks a determination that "the county is estopped from claiming that Jafay's property [is] not within a community service area." We find, however, that Jafay is not entitled to that relief under the doctrine of equitable estoppel.

■ This court has repeatedly recognized that equitable estoppel may be available as against a governmental agency to prevent manifest injustice. *Committee for Better Health Care for all Colorado Citizens v. Meyer*, 830 P.2d 884, 891–92 (Colo. 1992); *Montero v. Meyer*, 795 P.2d 242, 252–53 (Colo.1990) (Quinn, J., dissenting); *National Advertising Co. v. Department of Highways*, 718 P.2d 1038, 1043–44 (Colo. 1986); *P–W Investments, Inc. v. City of Westminster*, 655 P.2d 1365, 1372–73 (Colo. 1982); *Colorado Water Quality Control Comm'n v. Town of Frederick*, 641 P.2d 958, 964 (Colo.1982); *Berens v. Ground Water Comm'n*, 200 Colo. 170, 175 n. 4, 614 P.2d 352, 355 n. 4 (1980); *Crawford v. McLaughlin*, 172 Colo. 366, 376, 473 P.2d 725, 730–31 (1970); *Franks v. City of Aurora*, 147 Colo. 25, 30–31, 362 P.2d 561, 563–64 (1961); *Jones v. City of Aurora*, 772 P.2d 645, 647 (Colo.App.1988), *cert. denied* (1989). Equitable estoppel is not, however, so freely invoked against governmental agencies as it may be invoked against private persons. *Franks*, 147 Colo. at 30, 362 P.2d at 563; *Jones*, 772 P.2d at 647.

The doctrine "is founded upon principles of fair dealing and is designed to aid the law in the administration of justice where, without its aid, injustice might result." *Montero*, 795 P.2d at 252; *see Committee for Better Health Care*, 830 P.2d at 892 (holding that the doctrine is premised upon

principles of fair dealing); *Crawford*, 172 Colo. at 376, 473 P.2d at 730 (relying on *Piz v. Housing Auth.*, 132 Colo. 457, 463, 289 P.2d 905, 908 (1955)); *Franks*, 147 Colo. at 30–31, 362 P.2d at 564 (relying on *Johnson v. Neel*, 123 Colo. 377, 229 P.2d 939 (1951)).

■ We find that invoking the doctrine of equitable estoppel is not necessary in the present case to avert manifest injustice. Jafay owned the Boulder Tech Center in December of 1985, when the downzoning occurred. Jafay, however, ceased to own the Boulder Tech Center in 1988 when the bank foreclosed on his property. Accordingly, Jafay would not suffer manifest injustice in the absence of a determination that the Boulder Tech Center was *not* part of a community service area. Since Jafay no longer owns the Boulder Tech Center, Jafay may be made whole through a damages award to the extent he can prove that he is entitled to relief. Thus, the administration of law in this case does not require the assistance of the equitable doctrine.

## VI.

We affirm the court of appeals in part, reverse the court of appeals affirmance of summary judgment on the takings claim, and direct the court of appeals to remand the unlawful takings claim to the trial court for trial on the merits of that claim only.